UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DENNIS SANTUCCI and KIMBERLEY
SANTUCCI

                Plaintiffs,

       -against-

MICHAEL LEVINE, individually and as
Building Inspector for the Town of
Southeast, New York, WILLIS STEPHENS,
individually and as Town Attorney for
the Town of Southeast, New York,
TONY HAY individually and as
Supervisor of the Town of Southeast,
and the TOWN OF SOUTHEAST, NY.,

            Defendants.
-----------------------------------------------------------------X

**COMPLAINT**

Jury Trial Demanded

Plaintiffs DENNIS SANTUCCI and KIMBERLEY SANTUCCI, by their attorney

Jonathan Lovett, for their complaint respectfully allege:

## JURISDICTION

1. The Court's jurisdiction is invoked pursuant to 28 U.S.C. secs. 1331, 1343

and 42 U.S.C. secs 1983 and 1988.

## PARTIES

2. Plaintiffs DENNIS SANTUCCI and KIMBERLEY SANTUCCI are citizens of the

1

United States, domiciliaries of the State of New York, and residents of the Town of Southeast (hereinafter "Town") where they have resided as husband and wife at 5 Shady Lane, a residence situated in an R-60 zone.

3. At all times relevant to this Complaint, defendant MICHAEL LEVINE (hereinafter "Levine") who is sued in his individual and official capacities, served as the Building Inspector for the Town. As such, Levine had plenary discretionary authority for enforcement of the Town's Zoning Code. Levine is a personal friend of Eric Heinecke, the real property owner who shares a common boundary line with plaintiffs at 7 Shady Lane. Levine also bears hostility to Plaintiffs, publicly criticizing Dennis Santucci for repeatedly challenging him on zoning issues. Levine's conduct, jointly and intentionally taken in concert with his co-defendants as set forth *infra* and his actions and omissions have proximately caused Plaintiffs financial damages as well as emotional and related injuries.

4. At all times relevant to this Complaint, defendant WILLIS STEPHENS, Jr. (hereinafter "Stephens"), who is sued in his individual and official capacities, served as Town Attorney for the Town of Southeast and as the personal attorney of Eric Heinecke (hereinafter "Heinecke) with whom Stephens is a long-term and close personal friend. Due to his relationship with Heinecke, both as Town Attorney and as Heinecke's personal attorney, Stephens has repeatedly publicly

2

sided with Heinecke against Plaintiffs in connection with land use and zoning issues as indicated *infra.* In doing so, in concert with Levine, Stephens has deliberately misinterpreted provisions of the Town's Zoning Code to purposefully favor Heinecke and single out Plaintiffs alone for those adverse misinterpretations. As a proximate result and as indicated *infra,* defendants Levine and Stephens have ignored and/or distorted zoning complaints made by Plaintiffs against Heinecke and falsely exonerated Heinecke.  Stephens' conduct, intentionally taken in concert with Levine, has also proximately caused Plaintiffs financial damages, anxiety, public embarrassment and emotional upset with related physical symptoms.

5. Defendant TONY HAY (hereinafter "Hay"), who is sued in his individual and official capacities, is the elected Supervisor of the Defendant TOWN OF SOUTHEAST (a municipal corporation existing under the laws of the State of New York) and, as such, is a policymaker with plenary discretionary authority for enforcement of the Town's Zoning Code. As indicated *infra*, Hay has at least twice intentionally forbidden Plaintiff Dennis Santucci from publicly speaking out at Town Board meetings on matters of public concern regarding the Town's Zoning Code.

## FACTUAL ALLEGATIONS

6. Heinecke, whose property is also situated in an R-60 zone, and Plaintiffs are similarly situated for purposes of the Town's Zoning Code. On zoning complaints made by and/or on behalf of Heinecke, both Levine and Stephens have taken strong enforcement action against the Plaintiffs. On zoning complaints made by Plaintiffs against Heinecke Levine and Stephens have taken either no and/or minimal enforcement action.

7. -With the knowledge and approval of Levine and Stephens, Heinecke has made the following uses of his property at 7 Shady Lane without any permit or legal authorization from the Town and in violation of the Town's Zoning Code:

a. Constructed and expanded a visually offensive motorcycle race track (hereinafter "motocross") on which vehicles are routinely operated at high speed illegally within a few feet of Plaintiffs' property boundary, causing potential health hazards, generating obnoxious noise and dust adversely affecting and disturbing Plaintiffs,

b. Materially altered his property grades to the north, west and south and repeatedly altered those grades in connection with the maintenance and ever-expanding size of the motocross.

c. Publicly advertised and operated from a garage a commercial automobile repair facility used by, amongst others, Stephens- - which facility automobiles were constantly entering and leaving and to which "Levine Auto Parts" routinely delivered automobile parts/equipment. Operation of the facility created substantial noise which regularly disturbed Plaintiffs.

d. Constructed unsightly extremely high berms adjacent to the Plaintiffs' property line in connection with the motocross.

e. Created and maintained, by reason of the motocross' unlawful proximity to Plaintiffs' property, a dangerous condition that on at least one occasion resulted in a vehicular crash onto Plaintiffs' now-owned property resulting in physical injury.

f. Removed soil from the common boundary with Plaintiffs' property.

g. Added hundreds of  cubic yards of fill.

h. Constructed a "watchtower" from which spectators could observe races and *inter alia* converted a former restaurant ("Schwegler's") into a residence, and *inter alia*,

i. Created and utilizes an access road to the motocross.

The racetrack

8. On repeated occasions, acting *pro se* and/or through counsel, plaintiffs expressed to Levine their opinion that the creation, maintenance, operation, and enlargement of the motocross were unlawful and violated the Town's Zoning Code as did the access road.

9. Notwithstanding his self-evident conflict of interest in representing the Town and Heinecke at the same time, Stephens personally opined that the motocross was a lawful, prior non-conforming use - - even though any such arguable use had obviously been forfeited, to Levine and Stephen's knowledge, under the plain language of the Zoning Code by reason of the circumstance that for a two year period in the early 1990's the County of Putnam had taken title to the property for non-payment of taxes.

10. As a result of Stephen's false legal assertion and Levine's knowing acceptance of same, no and/or virtually no enforcement action was taken with respect to the motocross in sharp contrast to the Defendants' repeated, harsh and retaliatory enforcement action taken against Plaintiffs with respect to the Zoning Code.

11. When Plaintiffs continued to express their opinion that the motocross was illegal and could not properly be denominated as a prior non-conforming use, Levine discarded the prior non-conforming use theory and, upon information and

6

belief at Stephen's prompting, then claimed that the motocross was an "accessory use" permissible as of right under the Zoning Code.

12. That false conclusion was made in deliberate disregard of the Zoning Code which explicitly provided that an accessory use was one that is "clearly incidental" to the principal use on the same lot.

13. Moreover, the relevant zoning code forbids operation of a motocross within one hundred feet of a property line.

14. On a residential lot, a racetrack with a watchtower is clearly not incidental to the principal use, a residence. Nevertheless Levine, Stephens, Hay, and the Town Board ignored this circumstance.

15. Because Plaintiffs continued to express their opinion that the motocross was illegal, both as Town Attorney and Heinecke's personal attorney, Stephens warned Plaintiffs' counsel that if they continued to complain about the motocross, the Town will make it difficult for the Plaintiffs to do anything on their property.

16. Plaintiffs continued to express their complaints to Levine and Stephens' knowledge and the threatened difficulty ensued as indicated *infra*.

Heinecke's Claim to Vehicular Access Over Plaintiff's Property

7

17. In furtherance of Heinecke's personal objectives, he asserted a property interest in the northern corner (hereinafter "portion") of plaintiffs' land.

18.  Plaintiffs opposed Heinecke on this issue and, as a result, acting on Heinecke and Stephens' behalf, Levine urged Dennis Santucci to allow Heinecke to use that portion and to remove the surveyor's marker delineating the northern lot line of Plaintiffs' property.

19. Levine further advised Dennis Santucci that, if he agreed to allow Heinecke to do so, a "lot" of the Plaintiffs' problems would "go away".

20.  Plaintiffs did not agree and so advised Levine to Stephens' and Heinecke's knowledge.

21.  Thereafter, and because Plaintiffs continued to oppose Heinecke and Levine's attempt to appropriate for Heinecke this portion, none of Plaintiffs' zoning problems with the Town went away.

Heinecke's Alteration of Grades

22. Heinecke frequently and extensively substantially altered the grades on his property so as to construct, operate and/or maintain the motocross.

23. Plaintiffs complained that the alteration of the grade was illegal.

8

24. Levine took nominal corrective action with respect to Heinecke, but then subjected Plaintiffs to vigorous and expensive enforcement actions over minor grade changes on their property.

25.  As he frequently spent time on Heinecke's property, the Town Attorney was aware of Heinecke's unlawful alteration of the grade, but sided with Levine and essentially ignored the issue.

Operation of a Commercial Automobile Repair Facility

26. Plaintiffs complained to Levine about Heinecke's illegal operation of a commercial automobile repair facility.

27.  Defendant Stephens availed himself of this repair facility and was cognizant of its illegal operation.

28. Instead of promptly inspecting the facility on Plaintiffs' complaint - - or confirming the unlawful use with Stephens and issuing a notice of violation - - Levine provided Heinecke with a written notice that an inspection of the garage was going to be conducted.

29. In providing such forewarning, defendant Levine facilitated Heinecke's concealment of commercial equipment that would have clearly evidenced the illegal use.

The berms

30. Plaintiffs complained to defendant Levine that Heinecke's construction of very high berms used in connection with the operation of the motocross constituted an illegal alteration of the property grade.

31.  Stephens frequented Heinecke's property and personally observed these berms.

32. Neither Levine nor Stephens took remedial action on the basis of Plaintiffs' complaints.

Operation of Motor Vehicles within a Few Feet of Plaintiffs' Property.

33. Plaintiffs expressed their opinion that Heinecke's operation of motorcycles within a few feet of their property line was not only dangerous but illegal.

34.  Having adopted the Town Attorney's patently false and unsupportable conclusion that that operation constituted an accessory use, defendant Levine took no remedial action on plaintiffs' complaint, deliberately permitting the self-evidently dangerous condition to persist.

35.  Even assuming that the operation of a motocross were a permissible accessory use, the Town's Zoning Code forbade any such use within one hundred

feet of Plaintiffs' neighboring property - - a prohibition Heinecke violated wholesale to the Town's knowledge.

Removal of Soil from Plaintiffs' Common Boundary with Heinecke's Property

36. Plaintiffs expressed to Levine their opinion that Heinecke's removal of soil from their common boundary line was unlawful.

37. Despite plaintiffs' well-founded complaints, Levine refused to even inspect the site, claiming that he was "too busy," and took no enforcement action.

Adding Hundreds of Cubic Yards of Fill

38. Plaintiffs expressed their concern that Heinecke unlawfully added hundreds of cubic yards of fill to his property, despite the established limit of one hundred cubic yards per acre.

39. Despite plaintiffs' complaint and the fact that the volume of fill was plainly illegal given the small size of Heinecke's 1.86 acre property, neither Levine nor Stephens took remedial action.

40. Yet, when Plaintiffs added approximately two hundred cubic yards of soil to their property, which was clearly permissible because their property comprised five acres, Levine deliberately misinterpreted the law against Plaintiffs and took costly and selective enforcement action against them.

11

The Watchtower

41. Plaintiffs also complained that the watchtower on Heinecke's property was illegal.

42. Levine dismissed this complaint upon the calculatedly fabricated premise that the watchtower was a children's swing set.

43. Heinecke then added a "slide" to the watchtower to give the false impression that the watchtower had something to do with a children's play area.

Schwegler's Restaurant

44. Plaintiffs expressed their concern to Levine that Heinecke had illegally converted the restaurant to a residence.

45. Despite that expression of concern, and notwithstanding the plethora of code violations that this conversion necessarily offended, Levine simply ignored the circumstance as did Stephens on the premise that the restaurant used to be a residence.

The Ethics Complaint

46. Since it was self-evident that Levine and Stephens (officially and as Heinecke's private attorney) were jointly acting in concert to insulate Heinecke from code enforcement, Plaintiffs filed an ethics complaint against both of them with the Town.

12

47. By way of further retaliation against Plaintiffs, the Town concluded that there was no ethics violation.

The Wetlands Violation

48. In connection with repair work done by Dennis Santucci to a common access roadway situated on property other than that owned by Plaintiffs, Levine issued a wetlands violation with respect to Plaintiffs' property.

49. However since the alleged violation did not occur on Plaintiffs' property, this citation was impermissible - - a circumstance known to defendant Levine when he so acted.

Hay Twice Imposes Prior Restraints on Dennis Santucci

50. On July 27, 2017, after defendant Hay learned that Dennis Santucci had gone to his (Hay's) office to speak with him regarding matters of public concern pertaining to violations of the Zoning Code, Hay instructed Santucci that any communications he wished to engage in with him in his "official capacity" had to be "in writing"- - a requirement that would prevent him from ever addressing the Town Board which Hay chairs.

51. On November 16, 2017, during a "public comment" portion of a Town Board meeting, Dennis Santucci made inquiries to the Board regarding selective enforcement of the Zoning Code.

52. Before Santucci could express to the Board all of his concerns, defendant Hay interrupted and silenced him instructing "this comment is over".

## AS AND FOR A FIRST CLAIM

53. Plaintiffs repeat and re-allege as if fully set forth the factual allegations contained in paragraphs "1" to "52", inclusive.

54. Defendants' conduct, knowingly taken in concert and in accordance with an agreed upon retaliatory plan, violated Plaintiffs' rights as guaranteed by the First Amendment to the United States Constitution as made actionable against defendants by and through 42 U.S.C. sec. 1983.

## AS AND FOR A SECOND CLAIM

55. Plaintiffs repeat and re-allege as if fully set forth the factual allegations contained in paragraphs "1" to "54", inclusive.

56. Defendants' intentional misinterpretation of the law, their targeting plaintiffs for selective enforcement activity, and their refusal to act on plaintiffs' legitimate zoning complaints regarding code violations by Heinecke violated Plaintiffs' right to Equal Protection as guaranteed them by the Fourteenth Amendment to the United States Constitution as made actionable against defendants pursuant to 42 U.S.C. sec. 1983.

WHEREFORE judgment is respectfully demanded awarding:

14

i) compensatory damages as against each Defendant; ii) punitive damages against

each Defendant in their individual capacities; iii) reasonable attorneys' fees and

costs and iv) such other and further relief as to the Court seems just and

equitable.

Dated: Goshen, New York
       November 20, 2017

                                                   _____

                                             Jonathan Lovett
                                             Michael H. Sussman [3497]
                                           Counsel for Plaintiffs
                                           SUSSMAN & ASSOCIATES
                                           1 Railroad Avenue
                                           Goshen, New York 10924
                                           (845)-294-3991