UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DENNIS SANTUCCI and KIMBERLEY
SANTUCCI,

                    Plaintiffs,

    -against-

MICHAEL LEVINE, individually, WILLIS
STEPHENS, individually, TONY HAY,
individually and the TOWN OF SOUTHEAST, New
York,

                    Defendants.

No. 17-cv-10204 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Plaintiffs Dennis Santucci and Kimberley Santucci ("Plaintiffs") initiated this action on

December 29, 2017 by filing a federal complaint, which they amended on October 2, 2018, against

Defendants Michael Levine, Willis Stephens, Tony Hay, and the Town of Southeast (the "Town")

(collectively, "Defendants"). (*See* Am. Compl. ("AC"), ECF No. 40.) Plaintiffs assert two claims

pursuant to 42 U.S.C. § 1983, alleging that (1) Defendants Hay and the Town retaliated against

them in violation of the First Amendment and (2) all Defendants violated their Fourteenth

Amendment right to equal protection. Presently before the Court is Defendants' motion to dismiss

the AC pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Defs. Mot. to

Dismiss ("Defs. Mot."), ECF No. 43.)

    For the following reasons, Defendants' motion is GRANTED.

## **BACKGROUND**

    The following facts are derived from the AC and are assumed to be true for the purposes

of the Motion.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/8/2019

## I.  Factual Background

### A. Plaintiffs' Property Grievances

Plaintiffs are the owners of a parcel of land located at 5 Shady Lane, Southeast, New York. (AC ¶ 2.)  They have resided at 5 Shady Lane since July 2013.  (*Id.*)  Plaintiffs' neighbor is Mr. Eric Heinecke ("Heinecke"), who resides at 7 Shady Lane.  (*Id.* ¶¶ 3, 11.)  As the AC details, 5 Shady Lane and 7 Shady Lane are contiguous properties, slopping downwards from north to south. (*Id.* ¶ 11.)  Both properties are also situated in a R-60 zoning district within the Town.  (*Id.*)

Unfortunately for Plaintiffs, Heinecke has "openly and continuously" used and developed his property in a manner that allegedly violates several provisions of the Town Code.  (*Id.* ¶ 14.) Specifically, Heinecke has (1) expanded a "visually offensive" motorcycle racetrack ("Motocross Track"), in violation of Town Code Section 134-3; (2) created and used an access road to the Motocross Track; (3) altered his property's grades to the north, south, and west as a result of the Motocross Track's expansion, in violation of Town Code Section 69-8; (4) publicly advertised and operated a commercial automobile repair facility on his property, which created substantial noise and violated Town Code Section 138-17; (5) constructed "unsightly and extremely high" berms, in violation of Town Code Section 69; (6) permitted the use of motor vehicles within 100 feet of Plaintiffs' property, in violation of Chapter 134(E) of the Town Code; (7) removed soil from the common boundary with Plaintiffs' property, in violation of Town Code Section 69-8; (8) added several hundred cubic yards of fill, in violation of the Town Code[1]; (9) constructed a "watchtower" for spectators to observer races; and (10) converted a former restaurant into a residence.  (*Id.*)

Plaintiffs have not stood silent about these issues.  Rather, they have repeatedly challenged Defendants about the legality of Heinecke's use of his property, although the AC is often not clear

---

[1] The AC does not provide the specific Town Code provision Heinecke allegedly violated.

about when Plaintiffs specifically raised their concerns. As detailed below, Defendants have generally dismissed or ignored Plaintiffs' ten complaints.

### 1. Motocross Track

At the heart of Plaintiffs' allegations is the Motocross Track. Plaintiffs, for their part, have identified to Defendants several Town Code violations related to this use of Heinecke's property. (*Id.* ¶ 12.) On July 12, 2017, Defendant Levine—the Town's Building Inspector (*id.* ¶ 3)— eventually addressed these Motocross Track-related complaints, but he did not resolve the issue in Plaintiffs' favor.[2] (*Id.* ¶ 12.) Instead, he concluded that the Motocross Track was a permissible "accessory use" under Town Code Section 138-4B. (*Id.*) Because the Motocross Track was an "accessory use," Defendant Levine "refused to enforce" the Town Code against Heinecke. (*Id.*) In doing so, he also "singled [] Plaintiffs out" for complaining about Heinecke's property use. (*Id.*)

### 2. Access Road to the Motocross Track

At some earlier point in time, Heinecke asserted a property interest in the northern corner of Plaintiffs' land for use as a vehicular access point. (*Id.* ¶ 18.) Eventually, on December 14, 2015, Defendant Levine urged Plaintiffs to allow Heinecke to use this corner, and to remove the surveyor marker delineating the northern lot line of their property. (*Id.* ¶ 19.) Defendant Levine explained that if they allowed Heinecke to use this northern corner, as requested, "a 'lot' of Plaintiffs' problems with the [T]own would 'go away.'" (*Id.* ¶ 20.) Plaintiffs did not agree, which extended their "difficulties" with the Town.[3] (*Id.* ¶ 21.)

---

[2]     Defendant Levine's decision appears to be included in Defendants' Exhibit List, Exhibit D. (Defs. Mot. Exhibit List ("Defs. Ex. List"), ECF No. 46, Ex. D.) The Court has taken judicial notice of the records listed in Exhibits B-F of Defendants Exhibit List, as it is permitted to do on a motion to dismiss. *Weiss v. Inc. Vill. of Sag harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).

[3]     The AC does not note what those difficulties specifically entailed.

### 3. Alteration of Property Grades

Heinecke "frequently and extensively" altered—and apparently continues to alter—the grades on his property. (*Id.* ¶ 22.) Despite awareness of these alterations and Plaintiffs' "repeated objections," Defendant Stephens—the Town Attorney and Heinecke's personal attorney for zoning/land disputes (*id.* ¶ 5)—has not taken action against Heinecke.[4] (*Id.* ¶ 23.)

### 4. Operation of an Automobile Repair Shop on the Property

In conjunction with his Motocross Track, Heinecke operated a commercial vehicle repair facility on his property, which Defendant Stephens frequently used. (*Id.* ¶¶ 24-25.) Plaintiffs, on an unspecified date, lodged a complaint to Defendant Levine about this issue. (*Id.* ¶ 26.) Defendant Levine later advised Heinecke that he would inspect the facility, allowing Heinecke to "conceal the commercial equipment that would have clearly evidenced commercial use." (*Id.* ¶¶ 26-27.) Having not identified a violation, Defendant Levine took no action. (*Id.* ¶ 27.)

### 5. Construction of Berms on the Motocross Track

Heinecke's development of the Motocross Track involved constructing "very high berms." (*Id.* ¶ 28.) Plaintiffs, at an unspecified point in time, raised concerns about the berms to Defendant Levine. (*Id.* ¶ 29.) Defendants Stephens was also aware of them because of his "frequent presence" at 7 Shady Lane. (*Id.*) Neither Defendant Levine nor Defendant Stephens took enforcement action against Heinecke. (*Id.*)

### 6. Operation of Motor Vehicles Near Plaintiffs' Property

Heinecke's operation of the Motocross Track meant that motor vehicles operated at high speeds within a few feet of the properties' common boundary line. (*Id.* ¶ 30.) Plaintiffs raised

---

[4] Plaintiffs do not indicate whether Defendant Levine had been made aware of this issue. However, according to Exhibit D, Defendant Levine did conclude that Heinecke's alterations to the contours of his property were a violation of Chapter 69 Article II of the Town Code and, in turn, allowed Heinecke to apply for a special permit. (Defs. Ex. List, Ex. D at 3-5.)

this issue with Defendant Levine, but, relying on his determination that the Motocross Track was an "accessory use," he disregarded the complaint.[5] (*Id.* ¶ 31.)

### 7. Removal of Soil from the Properties' Boundary

Heinecke began removing soil from the common boundary line between 7 Shady Lane and 5 Shady Lane. (*Id.* ¶ 32.) On another unidentified date, Plaintiffs expressed their belief to Defendant Levine that this soil removal was impermissible. (*Id.*) Defendant Levine, however, refused to inspect Heinecke's property, advising Plaintiffs that he was "too busy." (*Id.* ¶ 33.)

### 8. Addition of Yard Fill

Heinecke added "hundreds of yards of fill" to his property in excess of the "one hundred cubic yard per acre" limit set by the Town. (*Id.* ¶ 34.) Despite Plaintiffs' (undated) complaints, neither Defendant Levine nor Defendant Stephens acted. (*Id.* ¶ 35.)

### 9. The Watchtower

To allow spectators to observe races on the Motocross Track, Heinecke constructed a "watchtower." (*Id.* ¶ 37.) At some point, Plaintiffs protested to Defendant Levine. (*Id.* ¶ 38.) Nevertheless, he "summarily dismissed" their complaint on a "calculatedly fabricated" premise that the watchtower was a children's swing. (*Id.*) After Defendant Levine's declination, Heinecke later added a slide to the tower "to give the impression" that it was a children's play area. (*Id.*)

### 10. Conversion of the Restaurant into a Residence

Finally, in or about March 2016, Plaintiff raised concerns about Heinecke's conversion of a restaurant located on his property into a residence. (*Id.* ¶ 39.) Again, Defendant Levine ignored their complaint, explaining that it was permissible to have two residences on one lot. (*Id.* ¶ 40.)

---

[5] The operation of motor vehicles on Heinecke's' property appears to have been addressed in Defendant Levine's June 12, 2017 assessment. (Defs. Ex. List, Ex. D at 3.)

## B. Defendants' Conduct Towards Plaintiffs

As Plaintiffs raised their grievances, they faced apparent affirmative pushback from Defendants Levine, Stephens, and Hay. Plaintiffs explain that this was part of a scheme to silence them. (*Id.* ¶ 13.)

### 1. Defendant Levine

While Defendant Levine repeatedly declined to enforce Heinecke's purported violations of the Town Code, he instituted against Plaintiffs enforcement actions related to similar issues. For example, although he did not take remedial or enforcement action against Heinecke because of the grade alterations made to the Motocross Track, Defendant Levine did challenge Plaintiffs' grading at the front of their property.[6] (*Id.* ¶ 23.) This forced Plaintiffs to purchase expert assistance to show that any grading issue had been resolved. (*Id.*) Similarly, although he took no action when Heinecke added fill to his property, Defendant Levine brought an enforcement action against Plaintiffs when they added two hundred cubic yards of fill to their property.[7] (*Id.* ¶ 36.)

In other instances, such as on December 12, 2014, Defendant Levine cited Plaintiffs for "wetlands violations" occurring on another property, 1 Shady Lane, at which Dennis Santucci was undertaking repair work. (*Id.* ¶ 49.) By filing a wetlands violation against 5 Shady Lane, Defendant Levine gave the impression that Plaintiffs' property title was compromised. (*Id.* ¶ 50.) Plaintiffs objected, but the violation remained on file for months. (*Id.* ¶ 51.)

Defendant Levine's conduct apparently extended to his interpretation of Town Codes. Specifically, he "intentionally misinterpreted the law" to reach the conclusion that the Motocross Track was an "accessory use" that did not warrant an enforcement action.[8] (*Id.* ¶ 12.)

---

[6]  The AC does not specify when this enforcement action occurred, or what zoning codes were enforced.
[7]  The AC does not specify when this enforcement action occurred, or what zoning codes were enforced.
[8]  Then, on June 24, 2017, Defendant Levine publicly criticized Plaintiffs because of their repeated complaints about Heinecke's property. (*Id.* ¶ 4.) Plaintiffs do no allege what this critique entailed or where it occurred.

### 2. Defendant Stephens

Plaintiffs have what can generously be described as an acrimonious relationship with Defendant Stephens. For example, while acting as Heinecke's personal attorney, he, on December 14, 2015, threatened to sue Plaintiffs if they did not "accede to Heinecke's" demand that he be permitted to use the northern corner of Plaintiffs' property.[9] (*Id.* ¶¶ 5, 19.)

Undeterred, Plaintiffs continued to challenge the legality of the Motocross Track and its day-to-day operation.[10] (*Id.* ¶ 15.) As a result, on April 26, 2017, Defendant Stephens warned Plaintiffs' counsel that the Town would "make it difficult for [] Plaintiffs to develop their property" if they continued to express their opinions.[11] (*Id.* ¶ 16.) Plaintiffs ultimately ignored these warnings and continued their vocal opposition to the Motocross Track. (*Id.* ¶ 17.)

### 3. Defendant Hay

Plaintiffs also attempted to raise their concerns with Defendant Hay, the elected Supervisor of the Town. (*Id.* ¶¶ 9, 43.) Yet on July 27, 2017, when Defendant Hay learned that Plaintiffs had attempted to address him in person, he instructed Plaintiffs to communicate any future concerns to him in writing. (*Id.* ¶ 43.) Later, on November 16, 2017, Defendant Dennis Santucci ("Mr. Santucci") attended a Town Board meeting to express his opinion about the Town's code enforcement. (*Id.* ¶ 47.) When he attempted to raise his concerns during the public comment portion of the meeting, Defendant Hay "immediately announced" that the "th[e] [public] comment [was] over." (*Id.* ¶ 48.) This prevented Mr. Santucci from speaking at the meeting. (*Id.*)

---

[9]  Five months later, around May 2016, Plaintiffs filed an ethics complaint with the Town regarding Defendant Stephens because of his improper insulation of Heinecke, in concert with Defendant Levine, from any code enforcement. (*Id.* ¶ 41.) The Town ultimately concluded on May 25, 2016 that any collaboration between Defendant Stephens and Defendant Levine did not violate the Town's Ethics Code. (*Id.* ¶ 42.)

[10]  The AC does not specify to whom Plaintiffs complained.

[11]  The AC does not specify whether privy to or aligned with Defendant Stephens's sentiment.

## II. Procedural Background

On December 29, 2017, Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendants (1) engaged in a retaliatory plan to silence Plaintiffs, in violation of the First Amendment; and (2) selectively enforced the Town's zoning laws against Plaintiffs, in violation of the Equal Protection Clause of the Fourteenth Amendment. (ECF No. 1.) Defendants initially moved to dismiss the complaint on September 20, 2018 (ECF No. 30), but, on October 2, 2018, Plaintiffs filed the AC to remove its official capacity claims against Defendants. (ECF No. 40.) Pursuant to a joint stipulation to allow Defendants to file a motion to dismiss the AC (ECF No. 39), Defendants then filed the present Motion on November 15, 2018. (ECF No. 43.)

Defendants move to dismiss the AC on several grounds. *First*, Defendants contend that dismissal is warranted because Plaintiffs failed to allege the dates of wrongdoing regarding several of the acts of misconduct alleged in the AC and, in other cases, failed to identify the specific Town Codes or Laws that Defendants selectively enforced. (Defs. Memo. of Law in Support of Their Motion to Dismiss ("Defs. Mot."), ECF No. 47, at 8, 10.) Defendants also argue that several of Plaintiffs' claims are time barred under the applicable statute of limitations. (*Id.* at 9.) *Second*, Defendants argue that Plaintiffs have failed to state a viable Equal Protection claim against Defendants. (*Id.* at 11.) *Third*, Defendants maintain that Plaintiffs have not sufficiently pleaded a cause of action for First Amendment retaliation. (*Id.* at 16.) *Finally*, Defendants contend that any claims against Defendant Hay must be dismissed for lack of personal involvement, and that Defendant Stephens cannot be liabile for merely providing legal counsel.[12] (*Id.* at 19.)

---

[12] Plaintiffs removal of their official capacity claims in the AC renders moot Defendants' motion to dismiss those claims. The Court notes that Defendants did not challenge whether Plaintiffs sufficiently pleaded that Defendants acted under a municipal policy or custom, as would be required to bring claims against the Town under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). As neither party raised this issue, the Court does not address it. *See Dodson v. Board of Educ. of the Valley Stream Union Free School Dist.*, 44 F. Supp. 3d 240, 247 (E.D.N.Y. 2014) (declining to address a *Monell* issue where neither party raised it).

## Legal Standards

### I.  Rule 12(b)(6)

Under Rule 12(b)(6), the inquiry for a motion to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  A court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

When considering a motion to dismiss, a court is generally confined to the facts alleged in the complaint. *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *Kleinman v. Elan Corp. plc.*, 706 F.3d 145, 152 (2d Cir. 2013).

To determine whether a complaint states a plausible claim for relief, a court must consider the context and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  A claim is facially plausible when the facts allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## II.    Section 1983

Under Section 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). As such, to successfully assert a Section 1983 claim, "a plaintiff must demonstrate: '(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor.'" *Town and Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586 (CS), 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019).

It is well settled in this Circuit that personal involvement in an alleged constitutional deprivation is a perquisite to an award of damages under Section 1983. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Personal involvement entails an "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005). In other words, a "plaintiff must demonstrate that the individual defendant acted with an improper motive and played a meaningful role in the decision making process, or was a moving force behind the discriminatory treatment." *Town and Country Adult Living, Inc.*, 2019 WL 1368560 at *12 (internal quotations and alterations omitted).

## DISCUSSION

At issue on the Motion are Plaintiffs' (1) First Amendment claim, against only Defendant Hay and the Town, regarding a "retaliatory plan to silence [] Plaintiffs" (*id.* ¶¶ 52-53); and

(2) Fourteenth Amendment Equal Protection claim, against all Defendants, regarding the selective enforcement of the Town Code against Plaintiffs (AC ¶¶ 54-55).

Defendants offer several arguments in support of the Motion. As to the Equal Protection claim, Defendants contend that dismissal is warranted because (1) Plaintiffs failed to allege the dates of wrongdoing for several of the alleged acts of misconduct in the AC and, in other cases, failed to identify the specific Town Code or Laws that have been selectively enforced (Defs. Mot. 8, 10.); (2) some of Plaintiffs' claims are time barred under the applicable statute of limitations (*id.* at 9); and (3) Plaintiffs' Equal Protection claim is substantively deficient due to their failure to identify a similarly situated comparator or establish Defendants' bad faith or intent (*id.* at 11-16). Regarding the First Amendment claim, Defendants maintain that (a) Plaintiffs have failed to identify a deprivation of a protected First Amendment interest or establish a harm; and (b) in any event, Plaintiffs' claims are not ripe. (*Id.* at 16-19.) Defendants also contend, as an additional basis for dismissal, that Plaintiffs have not pleaded Defendant Hay's personal involvement, and that Defendant Stephens cannot be liable for providing legal counsel to the Town.[13] (*Id.* at 19-22.)

Below, the Court addresses these arguments.

## I. Equal Protection Claim

Plaintiffs' AC sets forth a series of allegedly intentional and erroneous enforcement decisions, which tended to benefit Heinecke and burden Plaintiffs. As Plaintiffs allege, this "selective enforcement activity" targeted Plaintiffs in violation of their right to Equal Protection under the law. (AC ¶ 55.) Defendants counter that, *inter alia*, Plaintiffs have not sufficiently pleaded or established that "their property, or the nature of the violations charged against their property," is similarly situated to Heinecke's property or his alleged zoning violations.

---

[13] In their reply papers, Defendants also challenge any claim against Defendant Stephens for lack of personal involvement. (Defs. Reply to Pls. Opp. ("Defs. Reply"), ECF No. 49, at 8.)

(Defs. Mot. 13.)  Defendants further contend that Plaintiffs' selective enforcement claims cannot be maintained against Defendants Stephens or Hays, and that Plaintiffs' claim regarding the December 2014 wetlands violation is time barred.  As explained below, the Court fully agrees.

## A. Selective Enforcement

Under the Equal Protection Clause, "[n]o State shall . . . deny to any person within this jurisdiction the equal protections of the laws."  U.S. Const. amend. XIV, § 1.  The clause "is essentially a direction that all persons similarly situated should be treated alike."  *Thomas v. Town of Southeast*, 336 F. Supp. 3d 317, 331 (S.D.N.Y. 2018) (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000)).  To succeed on an Equal Protection claim, a "plaintiff must demonstrate that [he or she] was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citing *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)).

"Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [courts] have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  To this end, a plaintiff can show that he or she was treated differently from similarly situated individuals in circumstances where (1) "there was no rational basis for the difference in treatment ('class of one');" or (2) "the different treatment was based on a malicious or bad-faith intent to injure ('selective enforcement')."  *Artec Constr. & Dev. Corp. v. City of New York*, No. 15-CV-9494 (KPF), 2017 WL 5891817, at *4 (S.D.N.Y. Nov. 28, 2017).

Both parties seem to agree that Plaintiffs have brought a "selective enforcement" claim. (*Compare* AC ¶ 55*, and* Pls. Mot. in Opposition to Defs. Mot. ("Pls. Opp."), ECF No. 41, at 12, *with* Defs. Mot. at 12-14.) And an essential component of such a claim is that the plaintiff establishes that he or she is similarly situated with a comparator. *Bishop v. Best Buy, Co.*, No. 08 Civ. 8427 (LBS), 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010).

Generally, whether comparators are similarly situated is a fact issue for the jury. *Harlen Assocs.*, 273 F.3d at 499 n.2. This, however, is not an absolute rule. *Id.* Thus, on a motion to dismiss, a court "must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 8 (S.D.N.Y. 2017). Conclusory allegations of selective enforcement are insufficient. *Id.*

Notably, courts within the Second Circuit have expressed disagreement on the degree of similarity required by a selective enforcement claim. Some courts have applied the more exacting standard used for class-of-one claims, *i.e.* requiring that "[t]he level of similarity between plaintiffs and the persons with whom they compare themselves [] be extremely high." *See Kamholtz v. Yates Cty.*, No. 08-CV-6210, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008). Other courts have applied a less demanding standard, requiring that plaintiffs "identify comparators whom a prudent person would think were roughly equivalent." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp.2d 679, 696 (S.D.N.Y. 2011) (internal quotations omitted); *accord Yajure v. DiMarzo*, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001) ("The test for determining whether persons similarly situated were selectively treated is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent."). The Court need not resolve this split here because Plaintiffs would not even meet the less demanding standard.

Plaintiffs argue that they are similarly situated to Heinecke because (1) they are both real property owners in the Town with contiguous properties that slope downwards from north to south; and (2) their properties are both in a R-60 zoning district. (AC ¶ 11.) However, that is where the similarities end. The AC does not identify any other factual similarities necessary to support a plausible claim. For example, the AC does not note whether Plaintiffs' property had similar types of land uses or structures—whether non-conforming and/or "accessory"[14]—against which Defendants could have selectively enforced the Town Code. *See, e.g.*, *Panzella*, 231 F. Supp. 3d at 9 (concluding that plaintiffs, operators of a cruise boat business, did not identify similarly situated comparators because, although the comparators both had boats and operated on the same river, plaintiffs did not allege that defendant treated those comparators differently under similar circumstances); *Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 135-36 (E.D.N.Y. 2013) (holding that plaintiffs did not establish that their property was similarly situated to comparators because plaintiffs' property contained significantly different structures than the comparators).

Further, although Plaintiffs allege that Defendants selectively enforced two purported code violations on their property (AC ¶¶ 23, 36), there is no indication that they were of a similar nature or degree as those violations identified on Heinecke's property. It is simply not plausible, on the facts alleged, for a jury to find that Plaintiffs' property is similarly situated to Heinecke's property. Plaintiffs' Equal Protection claim is dismissed without prejudice.[15]

---

[14]     Upon a review of Exhibit D, it appears that there was some disagreement amongst the Town's officials as to whether Heinecke's Motocross Track was a "pre-existing, non-conforming use" (Defs. Ex. List, Ex. C) or an "accessory use" (*Id.* Ex. D at 3 n.2.) The distinction, however, is inconsequential here because Plaintiffs have not established that their property had any similar type of use on their property to which Defendants selectively enforced the Town's Code.

[15]     Because the Court has concluded that Plaintiffs failed to allege that Heinecke is a similarly situated comparator, it does not address Defendants' intent, or whether, as Defendants have argued, Plaintiffs' First Amendment claim "coalesces" with the Equal Protection claim. (Defs. Reply 3-4.)

## B. Defendant Stephens's Personal Involvement

In the AC, Plaintiffs contend that Defendant Stephens "knowingly acted in concert" with the other Defendants to "publicly side[] . . . with Heinecke against Plaintiffs in connection with land use and zoning issues affecting both of their properties." (*Id.* ¶ 7.) To support an inference of purported misconduct, Plaintiffs maintain that Defendant Stephens, "both as Town Attorney and Heinecke's personal attorney," warned Plaintiffs' counsel that the Town would "make it difficult" for Plaintiffs to develop their property (*id.* ¶ 16), and, in other instances ignored Heinecke's purported violations (*id.* ¶¶ 23, 29). Plaintiffs, however, allege no tangible, non-conclusory facts that indicate that Defendant Stephens, in his capacity as Town Attorney, was a moving force in the decision to bring an enforcement action against Plaintiffs or to not bring an enforcement action against Heinecke. *See Zdziebloski v. Town of E. Greenbush*, 336 F. Supp. 2d 194, 202 (N.D.N.Y. 2004) (concluding that a town attorney's "[i]nvolvement in discussions that [led] to a decision [by the town board was] not personal involvement"). Even had the Court not dismissed Plaintiffs' Equal Protection claim for failure to sufficiently identify a similarly situated comparator, any claims against Defendant Stephens would nevertheless be dismissed, without prejudice, for lack of personal involvement.[16]

## C. Defendant Hay's Personal Involvement

Aside from a stray assertion that Defendant Hay had "plenary discretionary authority for *inter alia* the enforcement of the Town's Code" (*id.* ¶ 9), the AC does not explain how he was personally involved, if at all, in any of the alleged zoning decisions. Therefore, any claims related

---

[16] Plaintiffs' claims against Defendant Stephens would also be dismissed to the extent they are predicated on solely his conduct as Heinecke's personal attorney. (*See, e.g.*, AC ¶ 19.) It is well established that a claim under Section 1983 requires that a private attorney act under the color of law. *See Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir. 1975) (agreeing that defendant "did not act 'under color of law', but merely in the capacity of a private attorney then representing Fine in state criminal proceedings").

to the enforcement of the Town Code are dismissed, without prejudice, as to Defendant Hay for lack of personal involvement. *See Raus v. Town of Southampton*, No. CV 13-7056, 2015 WL 2378974, at *5 (E.D.N.Y. May 18, 2015) (dismissing claim against town supervisor because complaint lacked specific allegations of personal involvement).

### D. Wetlands Violation

There is no independent statute of limitations set by Section 1983. *See Owens v. Okure*, 488 U.S. 235, 239 (1989). For this reason, courts will apply "the statute of limitations for personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). The applicable statute of limitations for Section 1983 claims arising in New York is three years. *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995). Although there is an exception for continuing violations, that doctrine only applies to "claims composed of a series of acts that collectively constitute on unlawful practice." *Andrews v. Town of Wallingford*, No. 3:16-cv-01232 (JAM), 2017 WL 3588571, at *3 (D. Conn. Aug. 21, 2017) (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015)). The "continuing violation" rule does not apply to "discrete unlawful acts, even where those discrete acts are part of a 'serial violation.'" *Gonzalez*, 802 F.3d at 220 (alteration omitted). Nor does it apply "merely because a plaintiff experiences continuing harm from a defendant's otherwise discrete time-barred act." *Andrews*, 2017 WL 3588571 at *3.

In this case, Defendants contend that Plaintiffs' claims premised on the December 12, 2014 wetlands violation is time barred. (Defs. Mot. 9-10; *see also* AC ¶ 49; Defs. Ex. List, Ex. B.). Plaintiffs filed this action on December 29, 2017. Accordingly, any claims accruing before December 29, 2014—such as the December 14, 2014 wetlands violation—fall outside of the statute of limitations. Plaintiffs, however, argue that the wetlands violation was a continuing violation because its effects continued past the date it was issued by being "kept on Plaintiffs'

property for months, causing them continuous impairment of their property title." (Pls. Opp. at 15). The Court disagrees. Regardless of its long-term effects, the issuance of the violation itself was a "discrete act" that, at most, amounted to a "serial violation." As such, the wetlands-violation claim is dismissed with prejudice as time barred.[17]

## II.    First Amendment Claim

Plaintiffs essentially plead two distinct harms to support their First Amendment claim: (1) Defendant Hay's infringement of Plaintiffs' right to complain to the Town (AC ¶¶ 43-48; Pls. Opp. 6-11); and (2) Defendants' retaliatory enforcement (and non-enforcement) of the Town Code (AC ¶¶ 11-40). Defendants first argue that Defendant Hay did not deprive Plaintiffs of an opportunity to submit grievances to the Town or impermissibly prevent them from speaking during the "public comment" portion of the Town Board Meeting. (Defs. Mot. 16-18.) Defendants then maintain that, regarding the enforcement of the Town Code, Plaintiffs have not identified any chilled speech. (*Id.* at 18-19.) The Court considers each argument.

### A.   First Amendment Claim Against Defendant Hay

#### 1.   *Defendant Hay's Written Communication Requirement*

The First Amendment protects the right to petition the government for a redress of grievances. *Weiss v. Willow Tree Civic Ass'n*, 467 F. Supp. 803, 817 (S.D.N.Y. 1979) (explaining that plaintiffs' assembling at a public meeting and speaking against a zoning application was entitled to First Amendment protection). This right to petition, however, "does not include an absolute right to speak in person to officials." *Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 206 (D. Conn. 2005) (quoting *Cronin v. Town of Amesbury*, 895 F. Supp. 375, 390 (D. Mass.

---

[17]    Defendants also note that Defendant Stephens made an assessment regarding the legality of the Motocross Track in 2006 (*See* Defs. Ex. B.) To the extent that any of Plaintiffs' claims are premised on the propriety of that 2006 decision, those claims are likewise time barred.

1995)). Indeed, courts within our Circuit have concluded that, so long as a plaintiff has an opportunity to submit grievances in writing, a defendant has not denied his or her the right to petition the government. *See Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 375 (N.D.N.Y. 2003) (finding no constitutional injury in a refusal to permit plaintiff's attorney to speak at meeting because plaintiff could submit grievances in writing).

Here, Plaintiffs only allege that Defendant Hay instructed them to ensure that any future communications with him were in writing. (AC ¶ 43.) These allegations do not establish that Defendant Hay deprived Plaintiffs of an opportunity to raise their grievances with the Town. Rather, Plaintiffs continued to maintain a written avenue to raise their concerns. *See Osborne v. Fernandez*, No. 06-CV-4127 (CS) (LMS), 2009 WL 884697, at *44 (S.D.N.Y. Mar. 31, 2009) ("Although the Plaintiffs advance allegations that the Defendants violated their First Amendment rights by 'determining whom Plaintiffs could and could not speak with, [ ] by prohibiting them from speaking with other persons with business before the Planning Board,' and by requiring that 'all documents be sent only to the Chairman at Town Hall,' these allegations do not raise the possibility—nor could they—that the Plaintiffs were literally prohibited from speaking with such other persons or from submitting such documents to persons other than Defendant Fernandez."). Plaintiffs' conclusory assertion that this requirement was "clearly intended" to prevent Mr. Santucci from addressing the Board (*id.* ¶ 44.) does not alter this conclusion.[18]

---

[18] To distinguish cases like *Osborne* and, specifically, *Prestopnik*, Plaintiffs' contend that Hay "limited Santucci's expression of grievances in writing and to Hay alone." (Pls. Opp. at 10.) This fact is not properly before the Court. It does not appear anywhere in the AC, and it is well settled that Plaintiffs may not amend a complaint in their opposition. *Teletronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 836 (S.D.N.Y. 1988) ("A claim for relief 'may not be amended by the briefs in opposition to a motion to dismiss.'"). In any event, Plaintiffs' attempt at a distinction is unavailing. Without more facts, there is no indication that Plaintiffs would have been denied an opportunity to raise their grievances just because Hay requested that they direct their grievances to him in his capacity as Town's Supervisor.

In short, Plaintiffs' claims predicated on Defendant Hay's directive that their complaints be in writing fail to state a claim under the First Amendment. The Court thus grants Defendants' Motion to the extent it applies to Defendant Hay's written-statement directive.

## 2. The "Public Comment" Incident

When assessing the propriety of government speech restrictions, courts will analyze three elements: (1) whether the speech is protected by the First Amendment; (2) what is the nature of the speech's forum; and (3) whether the "justifications for exclusion from the relevant forum satisfy the requisite standard." *See Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). Because it has concluded that Plaintiffs zoning violation grievances are protected by the First Amendment, the Court focuses its analyses on the latter two elements.

There are traditionally four types of forum classifications that will dictate the level of scrutiny with which a court examines speech restrictions: (1) a traditional public forum; (2) a designated public forum; (3) a limited public forum; and (4) a nonpublic forum. *R.O. ex rel. Ochshorn v. Ithaca City School Dist.*, 645 F.3d 533, 539 (2d Cir. 2011). Generally, for traditional public forums and designated public forums, the government may only impose content-neutral time, place, and manner restrictions that are "narrowly tailored to serve a significant government interest," and it must leave open ample alternative channels of communication. *See Hershey v. Goldstein*, 938 F. Supp. 2d 491, 506-07 (S.D.N.Y. 2013) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983)). For limited public forums, the government typically may impose restrictions on speech if they are "viewpoint neutral and reasonable in relation to the forum's purpose." *Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y. v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 546 (2d Cir. 2002). Finally, for nonpublic forums, the

government may apply reasonable restrictions that are "not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n*, 460 U.S. at 46.

"Courts have generally held that a public meeting of an elected municipal board . . . is a limited public forum for the purposes of First Amendment analysis." *Malta v. Slagle*, No. 05-CV-342S, 2007 WL 952045, at *3 (W.D.N.Y. Mar. 29, 2007) (collecting cases from within this Circuit). This includes the public comment portions of municipal board meetings. *See Cipolla-Dennis v. Cty. of Tompkins*, No. 3:18-CV-1241, 2019 WL 2176669, at *6 (N.D.N.Y. May 20, 2019); *Smith v. City of Middletown*, No. 3:09-cv-1431, 2011 WL 3859738, at *4 (D. Conn. Sept. 1, 2011), *aff'd sub nom Smith v. Santangelo*, 518 F. App'x 16 (2d Cir. May 1, 2013) ("Numerous courts have held that city council meetings which have been opened to the public are limited public fora . . . . [T]he public comment period during the Council meeting [also] constitute[s] a limited public forum."). Here, to the extent that Defendants could impose restrictions on Plaintiffs' speech at the Town Board Meeting's "public comment" period, those restrictions needed to be viewpoint neutral and reasonable. Plaintiffs, however, have not pleaded sufficient facts to establish that Defendant Hay ran afoul of this constitutional requirement.

The AC notes that Defendant Hay had "immediately" informed Mr. Santucci at the Town Board Meeting that the "[public] comment [was] over." (AC ¶¶ 47-48.) But notably absent from the AC is an indication of whether there were any content restrictions on the public comment portion of the meeting. *See Smith*, 2011 WL 31859738 at *5 ("[I]t is evident that the city council is entitled to restrict public comment at its meetings to topics on the agenda."). Nor does the AC establish that, unlike Mr. Santucci, other individuals were permitted to address the Town Board about issues related to the Town's zoning code, such that the Court could reasonably infer that Defendant Hay was specifically targeting Plaintiffs' viewpoint. *See Weinberg v. Vill. of Clayton,*

*N.Y.*, No. 5:17-cv-00021 (BKS/ATB), 2018 WL 5777292, at *6-7 (N.D.N.Y. Nov. 2, 2018) (concluding that plaintiffs sufficiently stated a First Amendment claim by alleging that defendant specifically changed rules regarding "public comment" period after plaintiffs' repeated attempts to address an issue at public meetings). Overall, the threadbare, conclusory allegations about Defendant Hay's conduct at Town Board Meeting fail to state a plausible claim under the First Amendment. The Court, accordingly, dismisses, without prejudice, Plaintiffs claims related to Defendant Hay's actions at the Town Board Meeting.

## B. Enforcement of Town Codes

To succeed on a First Amendment retaliation claim, a plaintiff must establish that (1) he or she has a right protected by the First Amendment; (2) the defendant's actions were "motivated or substantially caused" by the exercise of that right; and (3) the defendant's actions caused plaintiff some type of injury. *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)

As an initial matter, the right to complain to public officials about zoning violations is protected by the First Amendment. *See Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988)). Here, Plaintiffs repeatedly notified Defendants of alleged zoning violations at 7 Shady Lane. This was protected conduct.

The AC also sufficiently establishes a harm related to Defendants' conduct. In general, "private citizens claiming retaliation" have often been required to show an "'actual chill' in their speech as a result." *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011). To this end, Defendants argue here that Plaintiffs' speech was never chilled because of the enforcement or nonenforcement of the Town's zoning laws. (Defs. Mot. 18-19.) The Court agrees. Plaintiffs' allegations, in fact, support an inference that they continued to voice their concerns despite Defendants' conduct. (*See, e.g.*, AC ¶ 17.) Plaintiffs' continued outspokenness, however, does not end the harm inquiry.

"Chilled speech is not the *sine qua non* of a First Amendment claim." *Dorsett*, 732 F.3d at 160. Instead, a plaintiff can establish a First Amendment harm by showing that the retaliatory conduct either adversely affected his or her speech *or* caused plaintiff to suffer some other concrete harm. *Id.* Plaintiffs here have sufficiently alleged tangible harms from Defendants' alleged disparate enforcement of the Town's zoning codes. These harms included being forced, because of Defendants' conduct, to defend against a "costly and selective enforcement action" regarding the addition of fill to their property (*id.* ¶ 36), and to "expend[] [] substantial money to secure expert assistance" to resolve their property's grading issues (*id.* ¶ 23). Plaintiffs have also alleged that the Motocross Track "generat[ed] obnoxious noise and dust," which has 'adversely affect[ed] and disturb[ed]" them. (*Id.* ¶ 14.) As pleaded, these harms could support a plausible claim.[19]

Notwithstanding the above, Plaintiffs' claim falters when establishing the requisite nexus between Plaintiffs' protected conduct and Defendants' purported retaliation. In general, "[t]he ultimate question of retaliation is a defendant's motive and intent." *Gagliardi*, 18 F.3d at 195. Motive and intent, however, are "difficult to plead with specificity in a complaint." *Id.* For this reason, a plaintiff can establish a retaliatory motive by pointing to circumstantial evidence. *Lang v. Town of Tusten, N.Y.*, No. 14 CV 4136 (VB), 2015 WL 5460110, at *6 (S.D.N.Y. Aug. 6, 2015) (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). This includes showing unequal treatment

---

[19] Defendants argue that Plaintiffs' claims are not ripe because they failed to exhaust administrative remedies. (Defs. Mot. 19.) The Court disagrees. "[I]n the First Amendment context, the ripeness doctrine is somewhat relaxed." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002). To this end, courts have held that claims of First Amendment retaliation need not undergo a ripeness inquiry where there is an immediate injury and "pursuit of a[n] [] administrative decision would do nothing" to further define it. *Lang*, 2015 WL 5460110 at *4. Here, although Plaintiffs' pursuit of a zoning appeal could potentially reverse their fortunes, they have plausibly alleged the types of injuries that have already occurred and are defined enough at this juncture. The court's holding in *Rosendale v. Brusie*, No. 07-CV-8149 (CS), 2009 WL 778418, at *7 (S.D.N.Y. Mar. 25, 2009)—upon which Defendants rely—does not suggest differently. There, plaintiff challenged defendants' issuance of a special use permit and subsequent failure to enforce it. *Id.* at *1. The court, however, concluded that defendants' enforcement decision had not produced an immediate injury, noting plaintiff's failure to adhere to the Second Circuit's same conclusion in a related action, *Rosendale v. LeJeune*, 223 F. App'x 51 (2d Cir. 2007). There was no indication that plaintiff had pleaded any type of immediate harms that would have obviated the ripeness issue flagged by the court.

by a defendant or an ongoing campaign of adverse action. *See Hampton Bays Connections, Inc. v. Duffy*, 127 F. Supp. 2d 364, 374 (E.D.N.Y. 2001).

Although, in general, "it is sufficient to allege facts from which a retaliatory intent on the part of defendants can reasonably be inferred," *Gagliardi¸* 18 F.3d at 195, a plaintiff must nevertheless establish a "sufficient nexus between the protected conduct and the alleged retaliatory action." *Heusser v. Hale*, No. 3:07-cv-1660 (PCD), 2008 WL 2357701, at *3 (D. Conn. June 5, 2008); *accord Gagliardi*, 18 F.3d at 915 (concluding that the plaintiff sufficiently pleaded intent by showing, through a detailed chronology, that defendants "undertook a purposeful aggravated and persistent course of conspiratorial noncompliance and nonenforcement of [] pertinent municipal, zoning, noise and safety ordinances, rules, regulations and laws" in "response" to First Amendment conduct); *Duffy*, 127 F. Supp. 2d at 374 (finding a "clear causal chain" where plaintiff alleged, among other things, that defendants threatened to make it difficult to develop plaintiff's property, attempted to impose additional requirements for a permit application, issued a moratorium on such applications, and expressed an explicit intent to block plaintiff's development of its property, all upon plaintiff's exercise of his protected rights). "Bald and uncorroborated allegations of retaliation" will not suffice. *Gagliardi*, 18 F.3d at 195.

In this case, the crux of Plaintiffs' retaliation claim is that Defendants seemingly ignored Heinecke's violation of the Town's zoning laws or erroneously interpreted the law in his favor. Plaintiffs further aver that Defendants opted to pursue enforcement actions against them while declining to hold Heinecke accountable. According to Plaintiffs, Defendants retaliated because of Plaintiffs' repeated voicing of their concerns to the Town's officials.

At bottom, the AC is problematically sparse on details establishing a causal chain between, or clear retaliatory chronology underlying, Plaintiffs' protected speech and Defendants' conduct.

For their part, Plaintiffs explain that they made "several complaints" (AC ¶ 15) and identify a laundry list of alleged actions and inactions by Defendants. But Plaintiffs make no effort to tie these together. For example, in many cases, Plaintiffs failed to provide a specific date or period when they engaged in First Amendment conduct.[20] (*See, e.g.*, *id.* ¶¶ 22, 24, 28, 30, 32, 34, 37.) Similarly, for many of the allegations of purported enforcement impropriety—whether related to not enforcing the Town Code against Heinecke or enforcing it against Plaintiffs—the AC does not identify, among other things, how close in time Plaintiffs' grievances were to Defendants' subsequent enforcement conduct (or even whether one preceded the other), or how any specific instances of non-enforcement were related to Plaintiffs' conduct.[21] (*See, e.g.*, *id.* ¶¶ 23, 27, 29, 33, 36, 38, 40.) In some case, there is no indication beyond conclusory statements of what was the retaliation. (*See, e.g. id.* ¶¶ 21.)

Even when the AC does identify distinct dates of alleged misconduct, it is devoid of sufficient, non-conclusory facts that tie together the protected speech and the purported

---

[20] The Court briefly addresses Plaintiffs' contention that they can use discovery to discern when they "complained about the on-going illegal conduct of the Heinecke's." (Pls. Opp. at 14.) Such an assertion is plainly contrary to the spirit of the federal pleading standard. Plaintiffs (and their counsel) well know it is imperative that, to set forth a well-pleaded, plausible claim, a complaint *must* "contain sufficient factual matter" that does not simply amount to conclusory statements and threadbare recitals of elements. *See Iqbal*, 556 U.S. at 678. Discovery is not a vehicle to get around that standard. As the Court explained in *Twombly*:

> It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process. . . . [I]t is only by taking care to require allegations that reach the level suggesting [a plausible claim] that we can hope to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support [that] claim.

*Twombly*, 550 U.S. at 560 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (emphasis added). Here, Plaintiffs bring a complaint premised, in part, on their exercise of First Amendment rights. In doing so, they should be able to identify when—or at least a timeframe—they engaged in that protected conduct. Their failure to do so here does not entitle them to discovery as matter of course.

[21] Plaintiffs' allegation that their ignoring of Defendant Stephens warning about the Town "mak[ing] it difficult" to develop Plaintiffs' property led to "the results set forth *infra* [*i.e.*, AC paragraphs 18-51]" (AC ¶ 17) does not cure the AC's infirmities. There are simply not enough facts to establish a coherent timeline or causal chain, and, in fact, several of the incidents that are detailed in the subsequent paragraphs occurred *before* the alleged April 26, 2017 incident. (*See, e.g.*, *id.* ¶¶ 18-21, 39.)

misconduct. For example, in addition to flagging the June 12, 2017 opinion, Plaintiffs identify two discrete, unconnected statements by two separate individuals, Defendants Levine and Stephens, to establish intent: (1) Defendant Levine's claim around December 14, 2015 that "a lot" of Plaintiffs would go away if Plaintiffs acquiesced to Heinecke's land-use demands (AC ¶ 20); and (2) Defendant Stephens's statement to Plaintiffs' counsel, following Plaintiffs' complaint made on or around April 26, 2017, that "the Town would make it difficult" for Plaintiffs if they continued to express their opinion that the Motocross Track was illegal (*id.* ¶ 16).[22] Although concerning, these statements, alone, do not "nudge[] [Plaintiffs'] claim[] . . . across the line from conceivable to plausible" when it comes to establishing a retaliatory motivation. *Iqbal*, 556 U.S. at 680. Indeed, the AC does not sufficiently connect them to any purported retaliatory conduct. For example, there is no indication of how *Defendant Stephens*'s position influenced Defendant Levine' June 12, 2017 report, if at all.[23] Simply put, the AC falls far short of setting forth a "connection, temporal or otherwise," that would "render[] plausible the conclusion that [Defendants'] actions were undertaken to retaliate against [Plaintiffs] for [their] protected speech." *See Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 541-42 (S.D.N.Y. 2014) (finding no causal connection where plaintiff (1) provided conclusory allegations that "[did] not specify when 'he spoke out against Town corruption' or establish "how [his] speech resulted in adverse action"; and (2) if there were specific dates, offered no supporting facts establishing that defendant's conduct was a response to his statements).

---

[22] Plaintiffs also allege that Defendant Levine "publicly criticized" Mr. Santucci because of their grievances. (AC ¶ 4.) But Plaintiffs offer no specifics. Rather, they simply contend, in conclusory fashion, Defendant "admittedly" criticized Mr. Santucci "because [he] ha[d] repeatedly engaged in First Amendment protected [conduct] challenging [Defendant] Levine with respect to zoning issues pertaining to the Santucci property and that of Heinecke." (*Id.*) This allegation cannot support a plausible claim under the First Amendment.

[23] Of note, Defendant Levine's report indicates that Defendant Stephens's opinions were, in fact, excluded from his assessment. (Defs. Ex. List, Ex. D at 1.)

In conclusion, the AC has failed to establish a clear nexus between Defendants' retaliatory conduct and Plaintiffs' protected speech. Without that requisite nexus, the Court cannot conclude, even drawing all favorable inferences in their favor, that Plaintiffs have plausibly alleged a First Amendment claim based on Defendants' purported retaliatory conduct. Plaintiffs' First Amendment retaliation claim is therefore dismissed in its entirety, without prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff shall have until September 12, 2019 to file a second amended complaint concerning those claims dismissed without prejudice. Otherwise said claims shall be deemed dismissed with prejudice. Should Plaintiffs file a second amended complaint, Defendants will have thirty days from the date of the complaint's filing to answer or respond.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 43.

Dated:   August 8, 2019                  SO ORDERED:
         White Plains, New York

                                              NELSON S. ROMÁN
                                 United States District Judge