UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENNIS SANTUCCI, et al.,

                        Plaintiffs,

                -against-

MICHAEL LEVINE, individually and as
Building Inspector for the Town of Southeast,
New York, et al.,

                        Defendants.

**MEMORANDUM OPINION
AND ORDER**

17-CV-10204 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiffs Dennis Santucci ("Santucci") and Kimberley Santucci (collectively "Plaintiffs"),

residents of the Town of Southeast (the "Town"), bring this action under 42 U.S.C. § 1983 against

the Town, Town Building Inspector Michael Levine ("Levine"), Town Attorney Willis Stephens

("Stephens"), and Town Supervisor Tony Hay ("Hay" and collectively "Defendants") for various

violations of Plaintiffs' constitutional rights.

Plaintiffs filed their Complaint on December 29, 2017. (Doc. 1). The Complaint asserted

two (2) claims for relief against all Defendants: (1) First Amendment retaliation; and (2)

Fourteenth Amendment selective enforcement. (*Id.* ¶¶ 53-56). On August 10, 2018, Defendants

moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (*See* Docs. 30-

35). Approximately one month later, on September 25, 2018, the parties filed a stipulation by

which they agreed: (1) that Defendants' pending motion to dismiss was withdrawn; (2) that

Plaintiffs could file their First Amended Complaint ("FAC") on or before October 5, 2018; and (3)

to a briefing schedule for an anticipated motion to dismiss the FAC. (Doc. 36). Judge Román "So

Ordered" the stipulation on October 2, 2018. (Doc. 39).

Plaintiffs filed the FAC on October 2, 2018. (Doc. 40, "FAC"). The revised pleading again pressed two (2) claims for relief: (1) First Amendment retaliation against Hay and the Town, only; and (2) Fourteenth Amendment selective enforcement against all Defendants. (*Id.* ¶¶ 52-55). Defendants moved to dismiss the FAC under Rule 12(b)(6); that motion was fully briefed and filed on January 7, 2019. (*See* Docs. 41, 43-50).

On August 8, 2019, Judge Román issued an Opinion & Order ("Prior Order") granting Defendants' motion and dismissing certain claims with and without prejudice. (Doc. 52, "Prior Ord.").[1] Judge Román advised that Plaintiffs:

> shall have until September 12, 2019 to file a second amended complaint concerning those claims dismissed without prejudice. Otherwise said claims shall be deemed dismissed with prejudice.

(*Id.* at 26). Plaintiffs attempted to file their Second Amended Complaint ("SAC") on September 12, 2019, but the Clerk's Office noted that the filing contained a number of errors. (*See* Doc. 53; Sept. 13, 2019 Entry (notice to counsel explaining that the filing was "deficient" because, *inter alia*, the wrong ECF event type was chosen by the filer)). Plaintiffs attempted to file the SAC again on October 9, 2019, but there were still a variety of errors with the filing. (*See* Doc. 54, "SAC;" Oct. 10, 2019 Entry). Based upon a review of the docket, it does not appear that Plaintiffs ever rectified the errors identified by the Clerk's Office. Nevertheless, Defendants sought leave to file a motion to dismiss the SAC under Rule 12(b)(6) and Plaintiffs opposed that request. (Docs. 55-57). On April 3, 2020, this matter was reassigned to me, and on that day I set a briefing schedule for the instant motion. (Doc. 58).

The SAC presents five (5) claims for relief under 42 U.S.C. § 1983: (1) Fourteenth Amendment selective enforcement against Stephens and Levine; (2) Fourteenth Amendment

---

[1] While the Prior Order is available on commercial databases, *see Santucci v. Levine*, No. 17-CV-10204, 2019 WL 3742286 (S.D.N.Y. Aug. 8, 2019), citations to that decision correspond to the copy on the docket.

selective enforcement against the Town; (3) First Amendment retaliation against Stephens and Levine; (4) First Amendment retaliation against the Town; and (5) First Amendment free speech against Hay and the Town. (SAC ¶¶ 197-209). Defendants moved to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6) on May 4, 2020. (*See* Doc. 59; Doc. 62 "Def. Br."). Plaintiffs opposed the motion on May 18, 2020 (Doc. 65, "Opp. Br."), and it was fully briefed with the filing of Defendants' reply brief on May 29, 2020 (Doc. 68, "Reply Br.").

For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part.

## BACKGROUND

While the FAC consisted of fifty-five (55) paragraphs and pressed two (2) claims for relief over fourteen (14) pages, the SAC presents two hundred nine (209) paragraphs and asserts five (5) claims for relief over thirty-five (35) pages. (*Compare* FAC, *with* SAC). The Court assumes the parties' familiarity with the factual allegations as laid out in the Prior Order (Prior Ord. at 1-7) and incorporates the SAC's new factual allegations where appropriate *infra*.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

3

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, even if a document is not incorporated by reference into the complaint, the Court may consider a document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Defendants submitted six (6) documents for the Court's consideration on this motion. Annexed to Defendants "Exhibit List" were: (1) the SAC (Doc. 63-1, "List Ex. A"); (2) a December 12, 2014 letter and appearance ticket for the wetlands violation (Doc. 63-2, "List Ex.

B"); (3) a December 20, 2006 memorandum and letter regarding the conclusion that Eric Heinecke's ("Heinecke") motocross racetrack ("racetrack") was a prior, non-conforming use (Doc. 63-3, "List Ex. C"); (4) a July 12, 2017 letter from Levine to Hay concluding that the racetrack was a permitted land use (Doc. 63-4, "List Ex. D"); (5) a description of Plaintiffs' property (Doc. 63-5, "List Ex. E"); and (6) the July 15, 2013 deed to Plaintiff's property (Doc. 63-6, "List Ex. F"). The Court considers the December 20, 2006 memorandum and letter (List Ex. C) and the July 12, 2017 letter from Levine (List Ex. D) as the SAC either references, or Plaintiffs were aware of, these documents, and they are records of which judicial notice may be taken. (*See* SAC ¶¶ 33, 92-93, 99, 119, 167; Prior Ord. at 3 n.2 (concluding that the same documents could be considered on the motion to dismiss the FAC)); *see also Heckman*, 568 F. App'x at 43; *Manley*, 2011 WL 2947008, at *1 n.1; *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).

Although Defendants' presentation of these documents violates Local Civil Rule 7.1(a)(3) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, because Plaintiffs do not object to their authenticity, the Court may and does consider them. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."); *Bonadies v. Town of Amenia*, No. 19-CV-10890, 2020 WL 5209510, at *3 (S.D.N.Y. Aug. 31, 2020); *cf. G.C.W. ex rel. Rivera v. United States*, No. 15-CV-294, 2017 WL 933098, at *5 n.10 (S.D.N.Y. Mar. 8, 2017) (concluding on summary judgment that, violating Local Civil Rule 7.1(a)(3), the documents would be considered because opposing counsel did not object or challenge the authenticity of the exhibits). The remaining documents are not considered because: (1) Judge Román ruled that the wetlands violation was outside the statute of limitations (Prior Ord. at 16-17); and (2) the property description and deed would have no impact on the analysis herein.

## ANALYSIS

I.   Section 1983 Is a Mechanism for Vindicating Constitutional Rights

At the outset of the analysis, it bears noting that each of the five claims for relief contained in the SAC are brought under 42 U.S.C. § 1983. (*See* SAC ¶¶ 197-209). That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. As recognized in the Prior Order, this language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere. (Prior Ord. at 10 (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993))). As such, Plaintiffs must plead facts "demonstrat[ing]: '(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor.'" (*Id.* (quoting *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019) (alteration added)). In this case, Plaintiffs have invoked § 1983 in order to state claims against Stephens, Levine, Hay, and the Town for violating First and Fourteenth Amendment rights. (*See* SAC ¶¶ 197-209).

II.   Consideration of Allegations Outside the Statute of Limitations

Turning to the substance of the parties' dispute, the Court must address first the parties' competing positions on whether allegations outside the applicable statute of limitations may be considered in ruling on this motion. Judge Román explained previously that "the applicable statute of limitations for Section 1983 claims arising in New York is three years," so those claims "accruing before December 29, 2014 . . . fall outside of the statute of limitations." (Prior Ord. at 16). Defendants posit that this determination sets the boundaries of allegations that the Court may

6

consider and means that "all allegations contained in ¶¶ 45-75 of the Plaintiffs' SAC, which the Plaintiffs admit occurred prior to December 29, 2014," are immaterial. (Def. Br. at 12). Plaintiffs, on the other hand, insist that those allegations are "relevant to demonstrating the existence of intentional selective enforcement which continued during the limitations period." (Opp. Br. at 20).

Although conduct outside the statute of limitations is not actionable generally as Defendants suggest, it may be relevant to explaining the relationship between the parties and how actionable conduct materialized. *See generally Levine v. McCabe*, 357 F. Supp. 2d 608, 616 (E.D.N.Y. 2005) ("A statute of limitations does not generally bar the introduction of evidence that predates the commencement of the limitations period but is relevant to events during that period."). As such, the Court considers those pre-December 29, 2014 allegations for the purpose of providing context and background to those timely claims for relief.

III.   The First and Second Claims for Relief: Fourteenth Amendment Selective Enforcement

The first claim for relief complains that Stephens and Levine "engag[ed] in the selective enforcement of the town zoning code and building laws," thereby violating Plaintiffs' Fourteenth Amendment right to equal protection; the second claim for relief identifies the same wrong but proceeds against the Town as a *Monell* claim based on the theory that Stephens and Levine were policymakers.[2] (SAC ¶¶ 197-200). The crux of these equal protection claims for relief is that Stephens and Levine cited and prosecuted Plaintiffs for violating local zoning ordinances but failed to prosecute Plaintiffs' neighbor, Heinecke, for similar (if not worse) violations. The different

---

[2] A municipality may be held liable for violating an individual's constitutional rights only where the violation resulted from "a municipal policy or custom." *Dipinto v. Westchester Cty.*, No. 18-CV-793, 2020 WL 6135902, at *9 (S.D.N.Y. Oct. 19, 2020). As neither party has addressed whether Plaintiffs alleged plausibly the existence of a municipal policy or custom, the Court evaluates the viability of the *Monell* claims on the basis of whether Plaintiffs pled a constitutional violation. (*See* Prior Ord. at 8 n.12 (citing *Dodson v. Bd. of Educ. of the Valley Stream Union Free Sch. Dist.*, 44 F. Supp. 3d 240, 247 (E.D.N.Y. 2014))); *see also Ventillo v. Falco*, No. 19-CV-3664, 2020 WL 7496294, at *14 (S.D.N.Y. Dec. 18, 2020) (dismissing *Monell* claims because the plaintiff did not plead an underlying constitutional violation).

treatment, according to Plaintiffs, stems from the fact that Heinecke had personal relationships with both Stephens and Levine; in fact, Plaintiffs allege that Stephens is Heinecke's "childhood friend" as well as Heinecke's attorney. (SAC ¶ 3; *see also id.* ¶¶ 16, 19, 20, 27, 29, 57).

The Fourteenth Amendment provides, in relevant part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This provision "is essentially a direction that all persons similarly situated should be treated alike." (Prior Ord. at 12 (quoting *Thomas v. Town of Southeast*, 336 F. Supp. 3d 317, 331 (S.D.N.Y. 2018))). To state a claim that their right to equal protection was violated on a theory of selective enforcement of laws, "Plaintiffs must plausibly allege that any selective treatment they experienced 'was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injury [them].'" *Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. 2020) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (alteration in original)); *see also Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)).

Although the question of "whether two comparators are similarly situated is [generally] a factual issue that should be submitted to the jury," *Marom v. Town of Greenburgh*, No. 18-CV-7637, 2020 WL 978514, at *6 (S.D.N.Y. Feb. 28, 2020) (quoting *LTTR Home Care, LLC v. City of Mount Vernon Indus. Dev. Agency*, No. 17-CV-9885, 2019 WL 4274375, at *12 (S.D.N.Y. Sept. 10, 2019) (alteration in original)), on a Rule 12(b)(6) motion the Court "must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley*

*Hills*, 815 F. Supp. 2d 679, 697-98 (S.D.N.Y. 2011)). "To satisfy this standard, the plaintiff's and comparator's circumstances must bear a reasonably close resemblance." *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019) (internal quotation marks omitted). While the circumstances need not be "identical," Plaintiffs must establish that they were "similarly situated in all material respects to the [comparators] with whom [they] seek[] to compare" themselves. *Id.* (internal quotation marks omitted); *see also Bonadies*, 2020 WL 5209510, at *5 ("Courts in this circuit have required plaintiffs alleging selective enforcement claims to plausibly allege that . . . comparators were similarly situated in all material respects, or that a prudent person, looking objectively at the incidents, would think them roughly equivalent." (internal quotation marks omitted)).

In the prior round of motion practice regarding the FAC, Judge Román concluded that "[i]t is simply not plausible, on the facts alleged, for a jury to find that Plaintiffs' property is similarly situated to Heinecke's property." (Prior Ord. at 14). Defendants argue *inter alia* that the SAC, like its predecessor, suffers from this same shortcoming. The Court agrees.[3] (Def. Br. at 13-16).

Plaintiffs argue, without citation to the SAC, that they stated their claims for relief because they pled "that the properties were similar in all material respects" and that, while both properties were in violation of specific provisions of the zoning law, only Plaintiffs faced repercussions for their transgressions. (Opp. Br. at 21). While the SAC is more robust than its predecessor, the Court cannot conjure allegations where none exist. The only similarities Plaintiffs allege between their property and Heinecke's property are that: (1) the properties are adjacent to each other (SAC ¶¶ 3,

---

[3] Plaintiffs argued also that these claims should be dismissed because: (1) Plaintiffs have no right to force municipal actors to prosecute others (Def. Br. at 12-13); and (2) Plaintiffs failed to plead an improper motive for the different treatment (*id.* at 16-18). While the Court notes that the former argument mischaracterizes Plaintiffs' claims for relief—the actionable conduct would be Defendants' decision to enforce ordinances against Plaintiffs, *not* their failure to enforce ordinances against Heinecke—given the conclusion that Plaintiffs failed to allege facts that would permit a jury to conclude that Plaintiffs' property was similarly situated to Heinecke's property, the Court need not and does not reach these arguments.

24); (2) the properties are located in the same type of zoning district (*id.* ¶¶ 10, 26, 28); and (3) both properties may have been in violation of local ordinances governing grading and filling of property after December 29, 2014 (*id.* ¶¶ 43-44, 107, 110-11, 113, 127, 168, 176).[4] "[T]hat is where the similarities end." (Prior Ord. at 14). Such allegations describe only the general contours of the parcels and are insufficient to allege plausibly that the properties were similarly situated. *See Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 9 (S.D.N.Y. 2017); *New Page at 63 Main, LLC v. Inc. Vill. of Sag Harbor*, No. 15-CV-2433, 2016 WL 8653493, at *21 (E.D.N.Y. Mar. 19, 2016); *Witt v. Vill. of Mamaroneck*, No. 12-CV-8778, 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd sub nom. Witt v. Vill. of Mamaroneck, N.Y.*, 639 F. App'x 44 (2d Cir. 2016)

Moreover, far from pleading substantially similar aspects between the properties, Plaintiffs pled at least two significant *differences* between the parcels. First, to the extent that Plaintiffs complain about how Defendants responded to Heinecke's grading and filling violations, those violations were apparently tied to the racetrack. (*See* SAC ¶¶ 22-24, 51). To that end, while Plaintiffs dispute the propriety of the decision—an issue which, as recognized by Judge Román, falls outside the statute of limitations—the parties do not dispute that the Town, through its Zoning Enforcement Officer, concluded that the racetrack was "a pre-existing nonconforming use" in

---

[4] Plaintiffs argue without citation that "the SAC amply alleges that . . . Levine and Stephens . . . erroneously enforce[d] town laws concerning setbacks, grading and filling, [and] fence height against them, while ignoring actual violations of these provisions by" Heinecke. (Opp. Br. at 21). The different treatment vis-à-vis grading and filling is addressed above. However, there is no indication that the properties were similarly situated as to the remaining violations. Plaintiffs were cited for ordinances governing fence height, but there is no indication that Heinecke violated that ordinance; likewise, Heinecke violated the setback ordinance for having the racetrack within one hundred feet of his property line, but there is no allegation that Plaintiffs committed a similar violation. (*See* SAC ¶¶ 45, 47, 62, 68, 70-71, 76, 82-83, 87, 106, 123, 130-31 (allegations regarding Plaintiffs' stone wall/fencing); *id.* ¶¶ 22, 24-25, 28, 30-31, 100, 113, 167 (references to Heinecke's operation of the racetrack within one hundred feet of the property line)).

2006.[5] (SAC ¶¶ 88, 93; *see also* List Ex. C; List Ex. D). The fact that Heinecke's property had a pre-existing use designation not provided to Plaintiffs' property belies the argument that the parcels were similarly situated. *See Merry Charters, LLC v. Town of Stonington*, 342 F. Supp. 2d 69, 76 (D. Conn. 2004) (observing that the comparator had "a pre-existing nonconforming use" the plaintiff did not have and, as such, "was in an entirely different situation"); *cf. Panzella*, 231 F. Supp. 3d at 9 (dismissing selective enforcement claim based on the municipality's violation of a contract where the plaintiffs did not identify a comparator with a similar contractual relationship); *Missere v. Gross*, 826 F. Supp. 2d 542, 562-63 (S.D.N.Y. 2011) (two restaurants were not similarly situated because, *inter alia*, the comparator had an approved site plan that the plaintiff lacked (citing *Merry Charters, LLC*, 342 F. Supp. 2d at 70,76)). Second, Plaintiffs complain that Heinecke operated the racetrack on his 1.86-acre parcel, constructed a "watchtower" so "spectators could watch races," and operated an "illegal" car repair shop out of his garage. (SAC ¶¶ 28, 108, 175; *see also id*. ¶¶ 20, 37-38, 129). Plaintiffs, in contrast, were cited "for having too many chickens on their lands and for storing a commercial construction vehicle in a residential zone" and for installing an "above-ground pool" on their 5-acre parcel. (*Id*. ¶¶ 10, 97, 152). Keeping chickens[6] and operating a racetrack—which Plaintiffs describe as "an ongoing private nuisance, replete with obnoxious noise and substantial dust" (*id*. ¶ 26)—suggest two vastly different uses of land.

[5] Plaintiffs insist that the 2006 conclusion was incorrect and presumably challenge that determination. (*See generally* SAC ¶¶ 28, 88, 93, 99, 119). Indeed, Plaintiffs allege that they secured "[a]ffidavits from the prior residents" of their property "demonstrating that the [racetrack] did not exist when they lived there . . . ." (*Id*. ¶ 99). That may be true, but any claim stemming from "the propriety of that 2006 decision" is outside the statute of limitations and will not be revisited. (Prior Ord. at 17 n.17).

[6] The Court notes that, with respect to the "violation for having too many chickens on their lands and for storing a commercial construction vehicle," Plaintiffs allege that the "violation was factually baseless . . . [and] the deputy building inspector confirmed that it lacked any factual basis." (SAC ¶¶ 97-98). Plaintiffs do not allege that the violation was dismissed or specify how the violation was baseless. Conspicuously, Plaintiffs do not deny the presence of illegal poultry.

11

Upon review of the SAC, and granting Plaintiffs every possible inference, the first claim for relief is dismissed because they have failed to allege facts that would plausibly permit a jury to conclude that Plaintiff's property was similarly situated to Heinecke's property. As a natural result of that conclusion, the second claim for relief—a *Monell* claim against the Town founded on that same unpled constitutional violation—is dismissed as well.

IV.   The Third and Fourth Claims for Relief: First Amendment Retaliation

The third claim for relief asserts that Stephens and Levine, in response to Plaintiffs' complaints "about . . . conflicts of interest and uneven application of the law," retaliated against Plaintiffs by "imposing notice of violations, stop work orders and repetitive site visits . . . caus[ing] . . . hundreds of thousands of dollars" in expenses; the fourth claim for relief identifies the same wrong but proceeds against the Town as a *Monell* claim. (SAC ¶¶ 201-06). These claims for relief allege, in sum, that when Plaintiffs complained about Heinecke, Stephens, or Levine, they faced enforcement proceedings for violating local zoning ordinances.

"The First Amendment, applicable to the States through the Fourteenth Amendment, provides that 'Congress shall make no law . . . abridging the freedom of speech.'" *Virginia v. Black*, 538 U.S. 343, 358 (2003) (quoting U.S. Const. amend. I). "A plaintiff asserting a First Amendment retaliation claim 'must show [that]: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury.'" *Harenton Hotel, Inc. v. Vill. of Warsaw*, 749 F. App'x 17, 18 (2d Cir. 2018) (quoting *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)). The parties do not dispute the first or third element; rather, Defendants argue that Plaintiffs have not pled facts establishing the second element because any actionable conduct took place *before* Plaintiffs engaged in protected conduct. (Def. Br. at 19-23). The Court agrees.

The sequence of a First Amendment retaliation claim is straightforward: a plaintiff must engage in a protected activity and a defendant's actions—whatever they are—must be motivated by the plaintiff's protected activity. Phrased a different way, "[a]t the most basic level, defendants' allegedly retaliatory actions must occur later in time than plaintiffs' protected speech." *Parkash v. Town of Southeast*, No. 10-CV-8098, 2011 WL 5142669, at *7 (S.D.N.Y. Sept. 30, 2011), *aff'd* 468 F. App'x 80 (2d Cir. 2012); *see also Harenton Hotel, Inc. v. Vill. of Warsaw*, No. 12-CV-235, 2017 WL 4169342, at *7 (W.D.N.Y. Sept. 20, 2017) ("It is well settled that protected activity must precede any purported retaliation to establish a First Amendment retaliation claim."), *aff'd* 749 F. App'x 17 (2d Cir. 2018); *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 541-42 (S.D.N.Y. 2014). Plaintiffs pled that the tension between themselves and Defendants over the ordinances regarding Plaintiffs' fencing/stone wall and their grading and filling began in March 2014 when—outside the statute of limitations, after *a different neighbor* complained about Plaintiffs' violations— Plaintiffs received "a notice of violation and a stop work order." (SAC ¶¶ 45-51). It was only after those events took place that Plaintiffs observed similar violations on Heinecke's property and "questioned the apparently unequal enforcement of the town's zoning ordinance." (*Id*. ¶¶ 51-52). These enforcement proceedings cannot be linked plausibly to Plaintiffs' after-the-fact complaints.[7]

---

[7] The only other violations identified concern "having too many chickens . . . and . . . storing a commercial construction vehicle in a residential zone" and having an "above-ground pool in their backyard." (SAC ¶¶ 97, 152). Defendants argue that these violations cannot support the retaliation claim; Plaintiffs do not respond to this argument. (*Compare* Def. Br. at 22-23, *with* Opp. Br. at 22-25). By failing to respond, Plaintiffs "effectively concede[d]" the argument. *Ventillo*, 2020 WL 7496294, at *12 (alteration in original, internal quotation marks omitted). Nevertheless, even if that were not the case, these violations would not support a retaliation claim. As to the former, Plaintiffs suggest that Stephens and Levine cited them because Plaintiffs complained to the Town's special counsel about selective enforcement. (*Id*. ¶¶ 94-97). Plaintiffs do not allege, however, that Stephens or Levine were aware of that communication (*see id*.), so the violation cannot be retaliatory. *See Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 372 (S.D.N.Y. 2011). As to the latter, Plaintiffs concede that they installed the pool and do not dispute that its presence constitutes a violation. (SAC ¶ 152). In such a scenario, Plaintiffs cannot state a First Amendment retaliation claim because Defendants "would have taken the same action in the absence of the allegedly improper reason." *Holmes v. Poskanzer*, 342 F. App'x 651, 653 (2d Cir. 2009).

Plaintiffs concede tacitly that Defendants' decisions regarding violation enforcement preceded Plaintiffs' protected activity but argue that "the SAC makes clear that . . . Stephens and Hay escalated their selective enforcement efforts against [P]laintiffs *after* . . . Santucci raised his grievances concerning their unconstitutional conduct to the Town Board and the Planning Board and enlisted counsel and experts to advocate against this activity." (Opp. Br. at 24 (emphasis added)).[8] To support this theory, Plaintiffs rely solely on Judge Karas' decision in *Olivier v. Cty. of Rockland*, No. 15-CV-8337, 2019 WL 2502349 (S.D.N.Y. June 17, 2019). (Opp. Br. at 24). This argument is unavailing for two separate reasons.

First, the Court concludes that the facts, procedural posture, and claims for relief in this case are distinguishable from those in *Oilvier*. The plaintiff in that case—represented by Plaintiffs' counsel here—sued his former employer for Title VII retaliation. Denying the employer's motion for summary judgment, Judge Karas concluded that while the employer may not have known that the plaintiff filed an EEOC charge in making the initial decision regarding the plaintiff's leave status, the employer knew about the protected activity in making subsequent decisions as to plaintiff's status. *Olivier*, 2019 WL 2502349, at *24. The instant case, however, does not concern a claim of Title VII retaliation; and an employer's decision regarding their employee's leave status is distinguishable from a municipal officer's decision to prosecute local zoning law violations.

Second, even if the Court were inclined to apply the principle to this case, it would not do so because the SAC does not suggest that enforcement "escalated . . . after . . . Santucci" complained "to the Town Board and the Planning Board and enlisted counsel and experts," as their uncited argument insists. (Opp. Br. at 24). Looking to the SAC, there are no allegations suggesting that continued or escalated prosecution was caused by Plaintiffs' complaints to municipal entities

---

[8] The Court presumes Plaintiffs meant to name Levine as opposed to Hay, as the latter is not identified in the third or fourth claims for relief. (*See* SAC ¶¶ 201-06).

14

or retention of counsel and experts. For example, Plaintiffs pled that they hired counsel "to study inequities in zoning enforcement" and that those attorneys concluded that the Town engaged in such conduct, but Plaintiffs link those allegations to the fact that Levine "noted violations" of unspecified violations on a neighbor's property and took no action. (SAC ¶¶ 85-87, 91). That is not retaliatory conduct aimed at Plaintiffs. Plaintiffs pled also that Santucci complained to the Town Board on December 10, 2015 and days later the Town's special counsel "requested an inspection of Santucci's property based on neighbor complaints concerning the height of his fence . . . ." (*Id*. ¶¶ 119, 123). This inspection was caused by an unspecified neighbor's complaints about Plaintiffs, not because of Plaintiffs' complaints to Defendants. Plaintiffs allege likewise that, sometime in April 2016, Santucci appeared at a Planning Board meeting regarding whether he needed a "special permit" and the Planning Board eventually determined that no "special permit" was required. (SAC ¶¶ 139, 151). Apparently, that complaint resulted in a determination favorable to Plaintiffs. In short, Plaintiffs have neither pled nor specified any facts that would suggest plausibly that "escalated" enforcement actions were motivated by protected conduct. *See Parkash*, 2011 WL 5142669, at *7 (rejecting plaintiffs' argument that the Town's continued prosecution for zoning violations was motived by protected speech).

Mirroring the Court's conclusions as to the first and second claims for relief, the third claim for relief is dismissed because the allegedly retaliatory actions preceded the protected conduct (and therefore cannot be the impetus for the conduct about which Plaintiffs complain); and the fourth claim for relief, a *Monell* claim based on the retaliation referencing in the third claim for relief, is dismissed as well.

V.    The Fifth Claim for Relief: First Amendment Free Speech

The final claim for relief complains that Hay prevented Santucci "from speaking at a public meeting at which there were no such restrictions as to content imposed upon others" and that this "censorship and prior restraint violates the First Amendment." (SAC ¶¶ 208-209). This single claim for relief seeks redress against both Hay and the Town as a result of Santucci's interaction with Hay during a Town Board meeting on November 15, 2017. (*Id.* ¶¶ 185, 209). On that date Santucci "attempted to address selective enforcement of the . . . zoning code during the public comment portion" of the Town Board meeting. (*Id.* ¶ 185). "The Town Board did not impose any content restriction on what . . . the public could speak about during . . . public comment" and "members of the public were routinely permitted to speak and did speak about implementation and enforcement of . . . zoning ordinance[s] . . . ." (*Id.* ¶¶ 186-87). These "meetings are regularly televised and covered in print media" for residents. (*Id.* ¶ 191). Plaintiffs assert that when Santucci "made clear" that he intended to criticize Town officials and their allegedly selective zoning enforcement—and before Santucci's allotted time expired—Hay cut him off, "proclaiming, '[T]his comment is over.'" (*Id.* ¶¶ 185, 188-90). Plaintiffs allege that Hay silenced Santucci "to suppress the publication of [Santucci's] grievances" about "the Town and its enforcement of its zoning ordinance[s] . . . ." (*Id.* ¶ 193).

"A violation [of the First Amendment] occurs only when constitutionally protected speech is restricted, and the government's justification for the restriction is insufficient." *Endemann v. City of Oneida, N.Y.*, No. 19-CV-1444, 2020 WL 1674255, at *4 (N.D.N.Y. Apr. 6, 2020) (quoting *Frisby v. Schultz*, 487 U.S. 474, 479 (1988) (alteration in original)). As noted previously by Judge Román, the Town Board meeting constituted a limited public forum and, consequently, any restrictions on speech had to be "viewpoint neutral and reasonable in relation to the forum's

16

purpose." (Prior Ord. at 19 (quoting *Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y. v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 546 (2d Cir. 2002)); Def. Br. at 19; Opp. Br. at 23); *see also Smith v. City of Middletown*, No. 09-CV-1431, 2011 WL 3859738, at *4 (D. Conn. Sept. 1, 2011) (observing that "[n]umerous courts have held that city council meetings which have been opened to the public are limited public fora," and that the public comment period is specifically "a limited public forum"), *aff'd sub nom. Smith v. Santangelo*, 518 F. App'x 16 (2d Cir. 2013); *Malta v. Slagle*, No. 05-CV-342, 2007 WL 952045, at *3 (W.D.N.Y. Mar. 29, 2007). The question here is whether Plaintiffs have alleged that Hay's restriction was not viewpoint neutral. Defendants insist that, as pled, Hay's decision to silence Dennis was, indeed, viewpoint neutral. (Def. Br. at 19). The Court disagrees.

Plaintiffs alleged that the Town Board meetings were open to the public, that the meetings' content was shared through television and print media, that Town residents (and non-residents) were permitted to speak regularly on public issues (including zoning), and that there were no content restrictions. (SAC ¶¶ 177-78, 186-87, 191). However, when Santucci tried to speak and it became clear that he intended to criticize Town officials, he was silenced. (*Id.* ¶¶ 185, 188-90, 193). These allegations state plausibly a claim for violation of Santucci's First Amendment right of free speech. While the Town Board could "exclude certain types of speech, once express activities of a certain genre were allowed, others of the same genre could not be prohibited." *Endemann*, 2020 WL 1674255, at *5 (citing *Hotel Emps.*, 311 F.3d at 545-46). What's more, the speech allegedly silenced here—that of a private citizen criticizing his government—is a species that "'lies at the heart'" of the First Amendment. *Id.* (quoting *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999)).

Consequently, Defendants' motion to dismiss the fifth claim for relief is denied.

VI.    The Duplicity of Official Capacity Claims

The last issue for consideration is Defendants' argument that the claim for relief against Hay in his official capacity should be dismissed as duplicative of the claim against the Town.[9] (Def. Br. at 24-25). This premise is correct. "[I]n the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." *Jackson v. Cty. of Erie*, No. 17-CV-396, 2020 WL 5642277, at *4 (W.D.N.Y. Sept. 22, 2020) (quoting *Phillips v. Cty. of Orange*, 894 F. Supp. 2d 345, 385 (S.D.N.Y. 2012) (alteration in original)); *see also Taylor v. NYC*, No. 20-CV-5036, 2020 WL 4369602, at *3 (S.D.N.Y. July 30, 2020) (explaining that the claims "against Mayor DeBlasio in his official capacity are dismissed as redundant of . . . claims against the City of New York"); *Sandoz v. Doe*, No. 17-CV-5447, 2020 WL 3318262, at *9 (S.D.N.Y. June 18, 2020) (noting that "[a]n official-capacity suit is to be treated as a suit 'against [the] entity of which [the] officer is an agent'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (alterations in original))). As such, to the extent the fifth claim for relief is pressed against the Town and Hay in his official capacity, the latter portion of the claim is dismissed as redundant.

This conclusion does not, however, dismiss Hay from this case. Plaintiffs have not specified whether the fifth claim for relief was pressed against Hay in both his official and individual capacities or only one. (SAC ¶¶ 208-09). When a complaint is silent as to whether a defendant is named in their individual or official capacity, the Court assumes that actor is named in their individual capacity. *Kravstov v. Town of Greenburgh*, No. 10-CV-3142, 2012 WL 2719663, at *24 (S.D.N.Y. July 9, 2012); *see also Davis v. Cty. of Nassau*, 355 F. Supp. 2d 668,

---

[9] Defendants also make this argument regarding Levine and Stephens, but as the claims for relief associated with those actors have been dismissed, the Court does not address the argument as to them.

18

675-76 (E.D.N.Y. 2005). Strengthening the conclusion that the fifth claim for relief is alleged against Hay in his individual capacity as well, Plaintiffs seek punitive damages—relief generally unavailable in 42 U.S.C. § 1983 actions unless asserted against actors in their individual capacities. *Tenemille v. Town of Ramapo*, No. 18-CV-724, 2020 WL 5731964, at *17 (S.D.N.Y. Sept. 24, 2020) (explaining that "the law is clear that municipal defendants may not be held liable for punitive damages"). Consequently, the fifth claim for relief may proceed against Hay in his individual capacity.

## CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss is GRANTED in part. The first, second, third, and fourth claims for relief, along with the fifth claim for relief insofar as it is pressed against Hay in his official capacity, are DISMISSED. Plaintiffs' fifth claim for relief, to the extent that it is stated against the Town and Hay in his individual capacity, shall proceed to discovery. Defendants are directed to file an Answer to the SAC within fourteen (14) days of the date of this Memorandum Opinion and Order. The Court will issue an Initial Pretrial Conference Order and set a conference date in short order.

The Clerk of the Court is directed to terminate motion sequence pending at Doc. 59.

**SO ORDERED:**

Dated:   New York, New York
         January 8, 2021

_____
PHILIP M. HALPERN
United States District Judge